UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Brenda Wright, et al.

      Appellants,

v.                                                     Case No. 1:24-cv-23086-RAR

Bird Global, Inc. et al.

      Appellees,

_____/

## EMERGENCY MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL

**Request for Emergency Hearing:**

**On August 2, 2024, the Court entered the Confirmation Order [ECF No. 1214]. The California Plaintiffs filed their Notice of Appeal [ECF No. 1251] on August 9, 2024. The Effective Date of the Confirmation Order is August 17, 2024. If the Court does not enter a stay prior to that date, the California Plaintiffs will likely suffer irreparable harm because they risk losing any remedy on appeal. Accordingly, the California Plaintiffs request a hearing as soon as possible.**

**In the event the Court cannot hold a hearing prior to August 16, 2024, the California Plaintiffs request a temporary stay until such time as the Court may hold a hearing on this Motion.**

Brenda Wright, Lindsy Thompson, Marc Perkins-Carrillo, Gregory Buce, Borna Eslami, Tracy Squire, Benjamin Michael Palajac, John Francis Foley, Yaman Fejleh, and Destiny Smith (collectively, the "California Plaintiffs"), pursuant to Fed. R. Bankr. P. 8007, request the Court stay the Amended Confirmation Order [ECF[1] No. 1214] (the "Confirmation Order") pending appeal. The Confirmation Order is attached hereto as **Exhibit 1.** In support, the California Plaintiffs state as follows:

---

[1] ECF numbers in this Motion refer to such entries on the Bankruptcy Court docket.

## SUMMARY

1.      The Bankruptcy Court approved something previously unknown in bankruptcy: the nonconsensual adjustment of a non-creditors' claims against a non-debtor entity. Research has not revealed a single case which achieved that result.

2.      On July 29, 2024, the Bankruptcy Court held a status conference on confirmation of the *Debtors' Second Amended Joint Chapter 11 Plan of Liquidation* [ECF No. 802] (the "Plan") following the Supreme Court's decision that the Bankruptcy Code does not authorize third-party releases in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024). At the status conference, the Bankruptcy Court issued its ruling whereby the Bankruptcy Court ruled that *Munford*, which had authorized bar orders where such orders were necessary to a settlement, survives *Purdue* because *Munford* concerned bar orders in the context of settlements rather than third-party releases in connection with a plan of reorganization. The Court also overruled all other objections to confirmation, including the California Plaintiffs' objections based on classification and constitutional concerns.

3.      The Bankruptcy Court's rulings in connection with confirmation included four chief errors. First, the Court failed to heed *Purdue's* clear statement that "nothing in the bankruptcy code" authorizes the non-consensual extinguishment of a non-debtors claims against non-debtors. 144 S. Ct. at 2086. Second, the Court should not have allowed the testimony of Brad Safon ("Safon") when Safon failed to consider sufficient data, apply reliable principles and methods, or follow binding Eleventh Circuit precedent as to valuing unliquidated claims. Third, the Court improperly concluded that the California Plaintiffs' claims against solvent non-debtors are substantially similar to tort claims against the Debtors under 11 U.S.C. § 1122(a). Fourth, the Court

entered a final order approving the Bar Order and Channeling Injunction in contradiction of 28 U.S.C. § 157 and Article III.

4.      Without a stay, the California Plaintiffs will likely suffer irreparable injury because the specter of equitable mootness may eliminate the availability of appellate relief. In contrast, the Debtors and other parties in interest will not suffer any substantial harm because the Debtors are not an operating entity. A stay will effect a standstill of a case already at a standstill. Finally, no harm will befall the public interest. Rather, a stay will preserve the ability of appellate courts to answer a question of great public importance: what is the practical effect of *Purdue Pharma*? Accordingly, the California Plaintiffs are entitled to a stay pending appeal. *In re Woide*, 730 Fed. App'x 731, 737 (11th Cir. 2018).

5.      While this Motion includes argument as to each of the California Plaintiffs' bases for appeal, this Court's primary focus should be on one question: can the Bankruptcy Court approve a third-party release following the Supreme Court's clear and unambiguous pronouncement to the contrary?

## **BACKGROUND**

6.      The Debtors were in the business of renting electric scooters through the use of apps. The business model called for littering scooters throughout cities which end users could activate through a cell phone app in exchange for rental payments.

7.      Among the chief causes of the Debtors bankruptcies was the proliferation of personal injury tort claims against the Debtors and the cities in which the Debtors operated. Cities demanded the Debtors indemnify the cities for injuries arising out of the operation of the Debtors' business.

8.      The California Plaintiffs were each injured while riding a Bird scooter. Unlike many other claimants, the California Plaintiffs have no claims against the Debtors. Instead, the California Plaintiffs hold claims against the Municipalities arising out of the Municipalities negligent maintenance of roadways. In turn, the Municipalities hold claims against the Debtors for indemnification. The California Plaintiffs have never asserted claims against the Debtors and unequivocally do not hold claims against the Debtors.

9.      The Underwriters provided insurance coverage to the Debtors. That coverage included self-insured retention obligations ("SIR Obligations") ranging from $250,000 to $1,000,000 depending on the coverage period. In the Bankruptcy Court, a dispute arose between the Debtors and the Underwriters over the effect of the bankruptcy on the SIR Obligations. That dispute resulted in the Insurance Settlement Agreements. Pursuant to the Insurance Settlement Agreements and Amended Plan, Tort Claimants would receive their pro rata share of a $16-19 million trust. The Underwriters committed to funding $11 million out of at least $40 million in coverage, with additional evidence introduced that coverage was as high as $80 million. The Purchaser committed to funding $2 million, and the Municipalities committed to funding between $1-3 million. The remaining funds came from other insurance companies.

10.     As a condition to the Insurance Settlement Agreements, the Underwriters, Municipalities, and Purchaser demanded the Bar Order and Channeling Injunction. The Bar Order and Channeling Injunction prevent any Tort Claimant, including the California Plaintiffs, from bringing any claims against the Municipalities, among others. Instead, the Tort Claimants will receive their pro rata share of the $16-19 million. The provisions of the Plan containing the Bar Order and Channeling Injunction are attached hereto as **Exhibit 2**. The Bar Order and Channeling Injunction appear at paragraphs 22 and 23 of the Confirmation Order.

11.     The California Plaintiffs, an ad hoc group of Tort Claimants, Donna Tchirkow, and the Pittsburgh Plaintiffs all filed objections to confirmation of the Plan. ECF Nos. 775, 778, 779, 789. Those objections related to the Bankruptcy Court's ability to enter the Bar Order and Channeling Injunction and whether the Debtor could include in a single class all Tort Claimants. The California Plaintiffs also objected to the Bankruptcy Court's authority to enter a final order approving the Bar Order and Channeling Injunction. ECF No. 793.

12.     On June 10 and 12, 2024, the Bankruptcy Court held an evidentiary hearing to consider confirmation of the Debtors' Plan [ECF No. 802]. The Bankruptcy Court withheld its ruling until after the Supreme Court decided *Purdue Pharma* and requested briefing on the impact of *Purdue Pharma* on the Bar Order and Channeling Injunction. Interested parties filed briefs on the issue. ECF Nos. 1130, 1131, 1132, 1133, 1134, 1135, 1137, 1138, 1139.

13.     On July 29, 2024, the Bankruptcy Court held a status conference on confirmation of the Plan where the Bankruptcy Court issued an oral ruling confirming the Plan and overruling all objections. A copy of the transcript of the oral ruling is attached hereto as **Exhibit 3**. The oral ruling is incorporated into the Confirmation Order by reference. The Confirmation Order was entered on August 2, 2024.

14.     On August 2, 2024, the California Plaintiffs moved for a stay pending appeal in the Bankruptcy Court. Donna Tchirkow, the ad hoc group of Tort Claimants, and the Pittsburgh Plaintiffs all filed joinders to the motion for a stay. On August 8, 2024, the Bankruptcy Court held a hearing on that motion and denied it. A copy of the transcript of that hearing is attached hereto as **Exhibit 4**. The Bankruptcy Court's oral ruling begins on page 50. The California Plaintiffs filed a notice of appeal on August 9, 2024.

## ARGUMENT

**Legal Standard**

15.     "A stay pending appeal is an 'extraordinary remedy' and the party seeking it must show: "(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to them unless the stay is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." *In re Woide*, 730 Fed. App'x at 737 (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000)) (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)).

16.     While Courts consider all four factors, the first two are most critical. *In re Revel AC, Inc.*, 802 F.3d at 568. As to likelihood of success on the merits, the movant need not demonstrate that success is more likely than not. Rather, "the movant need only present a substantial case on the merits when a serious legal question is involved" and the equities favor the movant. *Ruiz v. Estelle*, 650 F.2d 555, 566 (5th Cir. 1981). Otherwise, Rule 8007 would not require applicants to first seek a stay in the Bankruptcy Court because the Court "has already decided the merits of the legal issue." *Id.*  "A likelihood of success on the merits is shown when the movant has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *In re Lickman*, 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003) (Williamson, J.) (quoting *Colorado Public Utilities Comm. v. Yellow Cab Cooperative Ass'n (In re Yellow Cab Cooperative Ass'n),* 192 B.R. 555, 557 (D.Co.1996)) (cleaned up).

17.     When analyzing a movant's likelihood of success on the merits, Courts "apply 'the usual standards of review of the merits …' reviewing *de novo* any underlying legal conclusions and for clear error any findings of fact.'" *State of Fla. V. Dep't of Health and Human Srvcs.*, 19 F.4th 1271, 1279 (11th Cir. 2021).

18.     "[A]ll four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach." *In re Revel AC, Inc.*, 802 F.3d at 571 (quoting *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300-01 (7th Cir. 1997)) (cleaned up).

### Likelihood of Success on the Merits

#### *The Bankruptcy Code Does Not Authorize the Bar Order and Channeling Injunction*

19.     The Bankruptcy Court erred by deciding that *Munford* survives *Purdue*. *See In re Munford*, 97 F.3d 449 (11th Cir. 1996) (authorizing bar orders where necessary to settlement); *Purdue Pharma*, 144 S. Ct. 2071 (holding the Bankruptcy Code does not authorize nonconsensual third-party releases contained in plans of reorganization). However, *Purdue* overruled *Munford*, such that the Court cannot approve a bar order in the settlement context. The Supreme Court held that such a release runs afoul of the Bankruptcy Code. *Purdue Phamra,* 144 S. Ct. at 2087. Looking to § 1123 for authority, the Supreme Court unequivocally concluded the Bankruptcy Code does not authorize third-party releases. *Id. Purdue Pharma* also explicitly acknowledged that § 105(a) does not create any such authority. *Id.* at 2082, n. 2 ("As the Second Circuit recognized, however, '§ 105(a) alone cannot justify' the imposition of nonconsensual third-party releases because it serves only to 'carry out' authorities expressly conferred elsewhere in the code.")

20.     That holding directly overrules *Munford*, which authorized releases in connection with the approval of settlements, and *Seaside*, which authorized releases in connection with plans of reorganization. In both *Munford* and *Seaside*, the Eleventh Circuit relied on § 105(a) to find authority to approve a third-party release. *In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996)

("We conclude that section 105(a) and rule 16 taken together provide amply authority for the bankruptcy's court action."); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1078 (11th Cir. 2015) (relying on § 105(a)). *Munford's* reliance purely on § 105(a) and Fed. R. Civ. P. 16 does not survive *Purdue Pharma's* statement that § 105(a) serves only to implement authority otherwise present in the Bankruptcy Code. *Purdue Pharma*, 144 S. Ct. at 2082, n. 2; *Cf. Law v. Siegel*, 571 U.S. 415, 420-21 (2014).

21.     The Eleventh Circuit found authority to approve the release in *Munford* from the combination of Fed. R. Civ. P. 16, made applicable in bankruptcy by Fed. R. Bankr. P. 7016, and § 105(a). *Munford*, 97 F.3d 455. However, neither the Federal Rules of Civil Procedure nor Federal Rules of Bankruptcy Procedure confer any authority not otherwise present in the Bankruptcy Code. *See* 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right.") (civil rules); 28 U.S.C. § 2075 ("Such rules shall not abridge, enlarge, or modify any substantive right.") (bankruptcy rules); *see also*, *BFP Investments, Inc. v. BFP Investments Ltd.*, 150 Fed. App'x 978, 979 (11th Cir. 2005) ("Rules of procedure may not modify substantive law."). *Purdue Pharma* makes clear that "nothing in the bankruptcy code contemplates" the nonconsensual extermination of claims against nondebtors. *Purdue Pharma*, 144 S. Ct. at 2086.

22.     Labelling the release a "Bar Order" and "Channeling Injunction" does not change the analysis. *Id.* The constant thread throughout *Purdue Pharma* is that the Bankruptcy Code does not provide for the nonconsensual adjustment of nondebtors' claims against nondebtors. *Id.* at 2083 ("Each of those 'other' paragraphs authorizes a bankruptcy court to adjust claims without consent only to the extent such claims concern the debtor."); at 2084 ("a bankruptcy court's powers are not limitless and do not endow it with the power to extinguish without their consent claims held by nondebtors … against other nondebtors"); at 2085 (noting the general rule that only debtors

receive discharges); at 2086 ("No one has directed us to a statute or case suggesting American courts in the past enjoyed the power in bankruptcy to discharge claims brought by nondebtors against other nondebtors"). While *Purdue Pharma* specifically analyzed § 1123(b)(6), it did so while unambiguously determining nothing else could provide the necessary authorization. *Id.* at 2086 ("Describe the relief the Sacklers seek how you will, nothing in the bankruptcy code contemplates (much less authorizes) it."). The Debtors cannot escape the clear import of *Purdue Pharma* through careful doublespeak. *See Id.* That conclusion applies with greater force where the Debtors seek approval of the exact arrangement—a release and channeling injunction—that the Supreme Court roundly rejected.[2] If the Bankruptcy Code does not authorize releases in the context of a plan of reorganization, where the Court's powers are at their peak, then surely the Court cannot authorize the same releases under the lower threshold of approval of a settlement. The indemnity relationship between the Municipalities and Debtors likewise does not affect the analysis. *See Id.* at 2087, n. 7.

23.    *Purdue Pharma* refrained from addressing plans which "provide for the full satisfaction of claims against a third-party nondebtor." *Purdue Pharma*, 144 S. Ct. at 2088. That limited restraint does not support the Confirmation Order. The Plan provides a nonconsensual third-party release in favor of the cities in exchange for $16-19 million that may be partially funded by the municipalities. The California Plaintiffs' claims are expressly deemed allowed pursuant to § 502(a) of the Bankruptcy Code. The Debtors did not undergo the claim estimation process of 11 U.S.C. § 502(c). *See generally* 4 COLLIER ON BANKRUPTCY P 502.04[4] (2024) (noting that estimation proceedings may be used to determine the amount of assets that are to be set aside to fund a mass tort claims trust). The Debtors did not object to the California Plaintiffs claims. Neither

---

[2] Excerpts of Purdue Pharma's plan, as included in the Joint Appendix filed in the Supreme Court, are attached as composite **Exhibit 5**.

the Bankruptcy Court nor any party in interest suggested a standard for determining whether the California Plaintiffs will receive the full value of their claims. While the Underwriters presented the testimony of Brad Safon—which, as addressed below, Bankruptcy Court should have excluded—he only opined as to the "settlement value" of the claims and not their full value. In any event, the California Plaintiffs' claims are deemed allowed as a matter of law. If the Debtors disagree with the asserted amounts of those claims, the Debtors must avail themselves of § 502 and Fed. R. Bankr. P. 3007 and their accompanying due process protections rather than backdoor a valuation through expert testimony on what is "fair and equitable." *See In re Bateman*, 331 F.3d 821, 828 (11th Cir. 2003) ("Because there was no objection to the proof of claim, Universal did not need to act further and the claim was 'deemed allowed.'"); *In re Dynamic Brokers, Inc.*, 293 B.R. 489, 496 (9th Cir. B.A.P. 2003).[3] The legal standard for what qualifies as a full satisfaction release will be reviewed *de novo* on appeal. The contention that the California Plaintiffs will receive full payment also begs the question of why the Municipalities and Underwriters are so insistent on a release when there are tens of millions of dollars of additional coverage. *Compare Munford*, 97 F.3d at 455-56 (settling party contributed the entirety of its assets) *with Purdue Pharma*, 144 S. Ct. at 2086 (the Sacklers seek a release "without putting anything close to all their assets on the table").

24.     Even if the Debtors did wish to estimate claims, estimation of "contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" are non-core proceedings and must be estimated by a district court rather than a

---

[3] "Rule 3007 implements the statutory command that claims be 'deemed allowed' unless a party in interest 'objects,' by requiring than an objection to claim be in writing and filed and by requiring notice to the creditor of the objection to claim at least 30 days before the hearing on the objection … Significantly, there is no rule that authorizes an objection to claim to be litigated in chapter 11 plan confirmation proceedings with complying with Rule 3007." *In re Dynamic Brokers, Inc.*, 293 B.R. at 496.

bankruptcy court. 4 COLLIER ON BANKRUPTCY P 502.04[4] (2024) (citing 28 U.S.C. § 157(b)(2)(B)). The Plan instead proposes the Tort Claim ADR Procedures with the appointment of a Tort Claims Administrator "to evaluate and resolve the Tort Claims." *See* ECF No. 802 at 102-31 (Plan Schedule 3, "Tort Claims ADR Procedures"). If the Plan provided for full payment of the allowed amount of a Tort Claim, backstopped by guarantees from the Underwriters and Municipalities, then *Purdue Pharma's* choice not to opine on full satisfaction releases might have relevance. The Plan does not, and the Bankruptcy Court could not approve the Bar Order and Channeling Injunction. A full satisfaction release sufficient to take a plan outside of *Purdue* must use the words "full satisfaction" rather than capping recoveries.

25.     The Supreme Court has, outside the bankruptcy context, made clear that a settlement between two parties cannot obliterate the rights of a third. *Texas v. New Mexico*, 144 S. Ct. 1756 (2024). In *Texas v. New Mexico*, the two states entered a proposed consent decree to resolve litigation over the apportionment of water in the Rio Grande. The United States had intervened in the case and objected to the proposed settlement because the agreement purported to cut off its rights. The Supreme Court held that was impermissible: "'[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party." *Id.* at 1761 (quoting *Firefighters v. Cleveland*, 478 U.S. 501, 529 (1986)).

26.     Even if *Munford* survives, the Court erred by determining the Debtors met *Munford's* standard. A critical factor in *Munford* was that the settling party contributed all of its available assets to the settlement. *Munford*, 97 F.3d at 452. Here, the Underwriters contributed only $11 million out of $40 million, or possibly $80 million, of available insurance. *Munford* also barred claims subject to substantial defenses. *Id.* at 456. In the instant case, the Debtors have not met their evidentiary burden that the California Plaintiffs have weak claims against the

Municipalities. Rather, this case is analogous to *GunnAllen Financial*, where Judge Williamson denied a bar order because creditors overwhelmingly rejected the bar order (here, almost 80% opposed), the barred claimants had no opt out rights, and no estate claims were intertwined with the barred claims. *In re GunnAllen Financial, Inc.*, 443 B.R. 908, 910-916 (Bankr. M.D. Fla. 2011).

27.     The Bankruptcy Court stated that it relied on the Underwriters brief at ECF No. 1135. In that brief, the Underwriters rely solely on the contention that $19.2 million is sufficient to pay all Tort Claims in full on reliance of the statement in *Purdue Pharma* that the Supreme Court declined to issue guidance on full satisfaction releases. However, neither the Bankruptcy Court nor Underwriters provided any standard by which the Bankruptcy Court must determine parties will receive full satisfaction of their claims in light of the fact that tort claimants have filed $384 million of presently allowed claims.

28.     In support, they reference the testimony of Safon, who valued only 20 out of 204 claims and, by his own admission, did not have access to sufficient information to form an opinion. During his testimony, Safon changed his opinion repeatedly whenever cross-examined on facts which he admitted he was previously unaware of. That testimony should have been excluded, for the reasons stated below, and should have received no weight. The Bankruptcy Court also failed to consider 204 proofs of claim, which are deemed allowed until objected to under 11 U.S.C. 502(a), which assert claims of over $384 million and were admitted into evidence. The Bankruptcy Court did not conduct an estimation proceeding pursuant to 11 U.S.C. 502(c). *See In re Bateman*, 331 F.3d at 828 ("Because there was no objection to the proof of claim, Universal did not need to act further and the claim was 'deemed allowed.'"). While the Bankruptcy Court gave credit to Safon's testimony, which he was paid thousands of dollars to give, the Bankruptcy Court also summarily ignored countervailing testimony for the reason of financial interests. The Bankruptcy

Court's failure to even consider the proofs of claim is reversible error. The Bankruptcy Court also received no evidence that the 20 claims which Safon evaluated were in any way representative of the 184 claims he did not analyze. As discussed above, the Bankruptcy Court did not apply the proper standard to determine full satisfaction. Regardless, the finding that the Plan provides for full payment has no basis in the evidentiary presentation and, therefore, is clearly erroneous.

29.     The Debtors and Underwriters, and by reference the Bankruptcy Court, also relied on *MacArthur* for the proposition that the Court can bar third-party claims pursuant to 11 U.S.C. § 363. That analysis finds no support in *MacArthur*. *MacArthur* found that bankruptcy courts could issue injunctions to enforce sales of estate property free and clear of all liens, interests, and encumbrances. *MacArthur v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988). Of relevance here, *MacArthur* similarly considered the sale of insurance policies. *Id.* at 91. The *MacArthur* injunction prevented only suits "based upon, arising out of, or related to the [settled] policies." *Id.* (alteration in original). In that case, parties with claims against the debtor had filed direct actions against the debtor's insurers. *Id.* at 92. The Court enjoined those direct actions. *Id.* Under that reasoning, the injunction was appropriate because the Bankruptcy Code allows the sale of assets of the estate free and clear and the Court could enforce that free and clear sale by enjoining continued actions against the asset being sold. *Id.* at 93. "The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers." *Id.* In other words, *MacArthur* authorizes injunctions against the purchaser of estate assets on account of a party's claim against that asset. Instead, the party must assert its claim against the proceeds. The Bar Order and Channeling Injunction go one step further. Instead of channeling only claims against the asset being sold, the Bar Order and

Channeling Injunction apply to claims that the California Plaintiffs hold against the Municipalities entirely independently of any claim to the insurance proceeds. *MacArthur* does not authorize the type of injunction that the Court entered, an issue which will receive *de novo* review, and the California Plaintiffs will prevail in their appeal.

**The Court Should Have Excluded Safon's Testimony**

30.     The Court erred when it allowed and relied on the testimony of Safon. Safon valued unliquidated claims without using any identifiable principle or method. *See* Fed. R. Evid. 702. A copy of Safon's Declaration is attached as **Exhibit 6.** Under binding Eleventh Circuit precedent, the standard for such valuations is to discount the expected value of an eventual judgment by the probability of it occurring. *In re Advanced Telecommunication Network, Inc.*, 490 F.3d 1325, 1335 (11th Cir. 2007). Safon testified he did not perform a mathematical calculation and unequivocally rejected the idea that he should use math to determine the value of claims. Therefore, Safon did not apply the Eleventh Circuit standard, and the Bankruptcy Court should have excluded his testimony. *Id.* Other bankruptcy courts follow that standard. *See In re Boy Scouts of America & Delaware BSA, LLC*, 642 B.R. 504, 554 (Bankr. D. Del. 2022); *In re Kane*, 470 B.R. 902, 924 (Bankr. S.D. Fla. 2012). An expert must engage in "a detailed review of the specific litigation, the underlying facts, how it was presented, and the like." *In re Kane*, 470 B.R. at 924. Safon stated he did not conduct a detailed review of the underlying litigation relevant to the 20 claims he did value and that he failed to conduct any review of over 90% of the Tort Claims. *See* Safon Declaration. The Bankruptcy Court cannot refuse to follow Eleventh Circuit precedent, and the admission and consideration of Safon's testimony was therefore an abuse of discretion.

**The Debtors' Classification Scheme Violates 1122(a)**

31.     The Bankruptcy Court also erred in determining the California Plaintiffs' claims are substantially similar to other Tort Claims such that they can be classified together. 11 U.S.C. § 1122(a) provides that a plan may classify claims together "only if such claim or interest is substantially similar to the other claims or interests of such class. "Substantially similar" claims are those "which share common priority and rights against the debtor's estate." *In re Greystone III J.V.*, 995 F.2d 1274, 1278 (5th Cir. 1991). The California Plaintiffs do not share common priority and rights against the Debtors' estate. As an initial matter, the California Plaintiffs have no rights against the Debtors' estates because the California Plaintiffs have no claims against the Debtors. Rather, other holders of Tort Claims have rights against the Debtor. Further, the California Plaintiffs hold claims against solvent non-debtor entities and, outside of bankruptcy, would recover the full value of their claims. As the California Plaintiffs have "alternative means at [their] disposal for protecting [their] claim[s]," their claims are not substantially similar to Tort Claims asserted solely against the Debtors. *See In re U.S. Truck Co., Inc*, 800 F.2d 581, 587 (6th Cir. 1986). "If the plan unfairly creates too many or too few classes … the plan cannot be confirmed." *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990). Here, the Plan created too few classes. The Plan also inappropriately classifies Tort Claims arising out of different years. The availability of the underlying coverage varies as some years have been fully exhausted while others are fully untouched. As the funding for the Tort Claims Trust comes from insurance payments, the Plan should separately classify Tort Claims according to the insurance policy years so that the holders of certain Tort Claims will not improperly share in insurance proceeds which they have no right to outside of the Plan.

32.     The Bankruptcy Court's oral ruling and the Confirmation Order did not include *any* factual findings on this issue. Assuming the Court relied completely on the Debtors' brief in

support of confirmation, that brief provides no justification for determining the California Plaintiffs' claims against non-debtors are substantially similar. *In re WR Grace & Co.*, which is the only case the Debtors cite in support of their classification scheme that does not stand for a general proposition, considered "direct" and "indirect" claims. 475 B.R. 34 (D. Del. 2012). While the Debtors attempt to construe the California Plaintiffs' claims as "indirect" and analogize to *WR Grace*, the Debtors do so through willfully ignoring the factual background of *WR Grace*. In *WR Grace*, the "indirect" claims were claims for indemnity or contribution. *Id.* at 109. Those are the claims the Municipalities hold against the Debtors. The California Plaintiffs' claims are the reason for the Municipalities' claims. *WR Grace* does not stand for what the Debtors say it does. The Debtors, and the Bankruptcy Court, have repeatedly ignored the fact that the California Plaintiffs *do not hold claims against the Debtors* and therefore have *no rights against the Debtors' assets*. The Bankruptcy Court and Debtors elide the interposition of the Municipalities without whom the California Plaintiffs' claims would have no relation to the Debtors' bankruptcies. Classification requires analyzing the nature and character of the claim as it relates to the Debtors and their estates. As the California Plaintiffs have no rights against the Debtors and their estates, the California Plaintiffs' claims are not substantially similar to the other Tort Claims. No evidence supports the Bankruptcy Court's ruling, and that ruling is clearly erroneous.

### The Bankruptcy Court Lacked Authority to Enter Final Orders

33.     The Bankruptcy Court lacked authority to enter a final order approving the Bar Order and Channeling Injunction. 28 U.S.C. § 157 provides the basis for the Bankruptcy Court's authority. The Bankruptcy Court may enter final orders on "core" matters—defined as proceedings "arising under" the Bankruptcy Code or "arising in" a case under the Bankruptcy Code—but the

Bankruptcy Court must issue proposed findings of fact and conclusions of law on non-core "related to" matters absent the consent of the parties. The phrases "arising under," "arising in," and "related to" relate to the basis for bankruptcy jurisdiction in 28 U.S.C. § 1334. Under § 1334, "A proceeding 'arising under' title 11 is one based in a provision of the Bankruptcy Code itself." *In re British Am. Ins. Co. Ltd.*, 600 B.R. 890, 894 (Bankr. S.D. Fla. 2019) (citing *Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir. 1999). "Arising in" refers to "a proceeding that, even if not specifically provided for in the Bankruptcy Code, can take place only in the context of a case under title 11." *Id.* In contrast, a "related to" proceeding is one which could conceivably have an effect on the bankruptcy estate. *See In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990).

34.     The Bankruptcy Court acknowledged in its oral ruling that it holds "related to" jurisdiction over the California Plaintiffs' claims against non-debtor Municipalities. Oral Ruling Trans., p. 27, l. 18. The California Plaintiffs have always agreed with that. Yet, in contradiction to binding Eleventh Circuit precedent and the plain statutory text, the Bankruptcy Court also concluded that it could enter a final order approving the Bar Order and Channeling Injunction. Section 157 unambiguously states that the Court cannot enter a final order on matters which are only "related to" the Debtors' bankruptcy. In recognition of that fact, the Eleventh Circuit has conclusively held that bankruptcy courts cannot enter final orders where they hold only "related to" jurisdiction. *Wortley v. Bakst*, 844 F.3 1313 (11th Cir. 2017). *Munford* itself, which the Bankruptcy Court relied upon to approve the Bar Order and Channeling Injunction, acknowledges the Bankruptcy Court holds only "related to" jurisdiction to enter the Bar Order and Channeling Injunction. As the Bankruptcy Court failed to follow binding Eleventh Circuit precedent, including cases the Bankruptcy Court relied upon, the California Plaintiffs will prevail on appeal.

35.     Article III also prevents the Court from entering final orders. Notwithstanding Congress's enumeration of core proceedings in 28 U.S.C. § 157(b)(2), Article III of the Constitution prevents the Bankruptcy Court from entering a final order where doing so would encroach on the judicial power conferred under Article III. *Stern v. Marhsall*, 564 U.S. 462 (2011). While the California Plaintiffs extensively briefed and argued this issue in the Bankruptcy Court, the dispute boils down to deciding whether to adopt the Second Circuit's or Third Circuit's analysis of *Stern* in the context of third-party releases. *Compare, In re Purdue Pharma, L.P.*, 69 F.4th 45, 68 (2d Cir. 2023), *reversed on other grounds*, 144 S. Ct. 2071; *In re Millenium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019). Those cases differ in their focus on the operative language of *Stern*. The Second Circuit found that "core" claims included "those stemming 'from the bankruptcy itself' or those which 'would necessarily be resolved in the claims allowance process.'" *In re Purdue Pharma*, 69 F.4th at 68 (quoting *Stern v. Marshall*, 564 U.S. 462, 471 (2011)). The Third Circuit focused on whether resolution of the claim was "integral to the restructuring of the debtor-creditor relationship." *In re Millenium Lab Holdings II*, 945 F.3d at 138. When considering *Stern*, the Eleventh Circuit has uniformly quoted the same portion as the Second Circuit. *See Wortley*, 844 F.3d at 1319 (quoting *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1190 (11th Cir. 2015) (quoting *Stern*, 564 U.S. at 499)). The Bankruptcy Court, and this Court, must follow the Eleventh Circuit's interpretation of *Stern*. By issuing a final order, the Bankruptcy Court failed to do so. Accordingly, the Plaintiffs will prevail on appeal, such that evidentiary issues will be considered *de novo*, and the Confirmation Order cannot have immediate effect.

36.     As the above analysis demonstrates, the issues on appeal are "so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more

deliberate inquiry." *In re Lickman*, 301 B.R. at 743. The California Plaintiffs satisfy the first factor for a stay pending appeal.

### The California Plaintiffs Will Suffer Irreparable Harm Absent a Stay

37.     Without a stay pending appeal, equitable mootness will likely deprive the California Plaintiffs from any appellate remedy as the Debtors may substantially consummate the Plan. *See, e.g., In re Hazan*, 10 F.4th 1244, 1252 (11th Cir. 2021). "Among the factors a court should consider in deciding whether to dismiss an appeal for equitable mootness are whether the appellant has obtained a stay pending appeal, whether the plan substantially consummated, and whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant." *Id.* Without a stay, all factors likely will weigh against the California Plaintiffs. The likelihood the California Plaintiffs will lose their ability to appeal is higher where the challenged decision involves approval of a consummated settlement. *See, e.g., Musilino v. Alabama Marble Co., Inc.*, 534 B.R. 820, 829-830 (N.D. Ala. 2015). As a stay is necessary to preserve the California Plaintiffs' ability to appeal, they will suffer irreparable harm absent a stay. The risk of equitable mootness is sufficient to establish irreparable harm. *See In re Adelphia Communications Corp.*, 361 B.R. 337 (S.D.N.Y. 2007); *In re Cujas*, 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007); *See also In re Bart*, 82 S. Ct. 675 (1962) ("In view of these facts and the likelihood that the normal course of appellate review might otherwise cause the case to become moot … I order that the petitioner's stay application be granted …."). If a stay is not granted, the California Plaintiffs will lose their rights to pursue the solvent Municipalities.

### Other Interested Parties Will Not Suffer Any Substantial Harm

38.     Other interested parties will not suffer any substantial harm if the Court stays the Confirmation Order pending appeal. The Debtors have already sold their assets to the Purchaser.

The only things to be done under the Plan is the pursuit of litigation, the contributions in consideration of the Bar Order and Channeling Injunction, and the resolution of the Tort Claims. Nothing prevents the Debtors from pursuing litigation targets if the Court stays the Confirmation Order. The only effect of a stay is to delay payments to Tort Claimants, of whom the active parties joined the California Plaintiffs in requesting a stay before the Bankruptcy Court and will likely join in the appeal. The Tort Claimants also overwhelmingly rejected the Plan. Accordingly, no interested parties will suffer any substantial harm.

***The Public Interest Supports a Stay***

39.     The most glaring issue on appeal is whether *Purdue* overruled *Munford.* A stay will preserve that issue for appeal. The effect of *Purdue* on *Munford* is not addressed in any case law, and deciding an issue of first impression will serve the public interest by avoiding future litigation over these same issues and avoiding potential forum and judge shopping.  Further, nearly 80% of Tort Claimants rejected the Plan, and every active Tort Claimant objected to confirmation as well as joined in the California Plaintiffs' motion for a stay in the Bankruptcy Court. The bankruptcy process relies on consensual resolution of contested issues. Nothing about the Bar Order and Channeling Injunction represents a consensual resolution of the Tort Claimants' claims. The public interest is best served by allowing the Tort Claimants to make their own decisions as to their claims rather than a paternalistic court imposing its view on what constitutes a fair settlement.

40.     As all factors support a stay pending appeal, including the most critical factors of a substantial likelihood of success and the risk of irreparable harm, the Court should stay the Confirmation Order until the conclusion of all appeals. If the Court finds that a stay would be improper, the California Plaintiffs request a 30-day stay so that they can seek a stay from the Eleventh Circuit.

41.     Pursuant to Fed. R. Bankr. P. 8007(b)(2)(B), the Bankruptcy Court's written order denying the California Plaintiffs' motion for a stay is attached as **Exhibit 7.**

WHEREFORE, the California Plaintiffs request the Court grant this Motion and stay the Confirmation Order [ECF No. 1214] pending the conclusion of all appeals. If the Court finds a stay pending conclusion of all appeals would be improper, the California Plaintiffs request a stay the Confirmation Order for a period of 30 days to allow the California Plaintiffs time to seek a stay from the Eleventh Circuit.

## <u>CERTIFICATION OF EMERGENCY PURSUANT TO LOCAL RULE 7.1</u>

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing in this case on August 14, 2024.

> **SHRAIBERG PAGE P.A.**
> Attorneys for the California Plaintiffs
> 2385 NW Executive Center Drive, #300
> Boca Raton, Florida 33431
> Telephone: 561-443-0800
> Facsimile: 561-998-0047
> bss@slp.law
> shess@slp.law
>
> By:  _/s/ Bradley S. Shraiberg_____
> Bradley S. Shraiberg
> Florida Bar No. 121622
> Samuel W. Hess
> Florida Bar. No. 1044184