

**ORDERED in the Southern District of Florida on August 12, 2024.**

**Corali Lopez-Castro, Judge
United States Bankruptcy Court**

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| In re: | Chapter 11 Cases |
|---|---|
| BIRD GLOBAL, INC., *et al.*,[1] | Case No. 23-20514-CLC |
| Debtors. | (Jointly Administered) |

**ORDER DENYING EMERGENCY MOTION TO
STAY CONFIRMATION ORDER PENDING APPEAL**

**THIS MATTER** came before the Court on August 8, 2024, at 2:30 p.m. in Miami, Florida for a hearing to consider the (i) *Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1213] (the "Stay Motion"); (ii) *Debtors' Response in Opposition to the Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1227] (the "Response"); (iii) *Third*

---

[1] The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

*Lane Mobility, Inc.'s Joinder in and Supplement to Debtors' Response in Opposition to the Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1228] ("Third Lane Mobility Joinder"); (iv) *Underwriters' Joinder and Supplement to Debtors' Response in Opposition to the Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1229] ("Underwriters' Joinder"); (v) *Tort Claimants' Joinder in Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1242] ("Tort Claimants' Joinder"); (vi) *Municipalities' Joinder in Debtors' Response in Opposition to the Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1244] ("Municipalities' Joinder"); and (vii) *Pittsburgh Plaintiffs' Joinder in California Plaintiffs' Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1245] ("Pittsburgh Plaintiffs' Joinder" and, together with Third Lane Mobility Joinder, Underwriters' Joinder, Tort Claimants' Joinder, Municipalities' Joinder, the "Joinders"). The Court, having considered the Stay Motion, the Response, the Joinders, the argument of counsel for (a) the Debtors; (b) Third Lane Mobility; (c) Underwriters; and (d) the California Plaintiffs, and being otherwise fully advised in the premises, finds that denial of the Motion is appropriate for the reasons stated below.

### **Standard for Obtaining a Stay Pending Appeal**

To obtain a stay pending appeal, the California Plaintiffs had the burden to clearly establish:

(1) that they are likely to prevail on the merits of their appeal;

(2) that they would suffer irreparable injury if the Amended Order (I) Approving the First Amended Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Liquidation on a Final Basis, (II) Confirming the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation, (III) Approving the Insurance Settlement Agreements, and (IV) Entering Bar Order and Channeling Injunction [ECF No. 1214] (the "Confirmation Order") is not stayed;

(3) that other parties will suffer no substantial harm if a stay is granted; and

(4) that the issuance of a stay will serve the public interest.

*State of Fla. v. Dep't of Health & Hum. Servs.,* 19 F.4th 1271, 1279 (11th Cir. 2021) (quoting *Touchston v. McDermott,* 234 F.3d 1130, 1132 (11th Cir. 2000) (en banc)).

### **First Factor: Likelihood of Success on Appeal**

As to the first factor, the California Plaintiffs have not established that they are likely to prevail on the merits of the appeal. On appeal, the Court's findings of fact would be reviewed for clear error and its legal conclusions would be reviewed *de novo. In re Woide*, 730 F. App'x 731, 734 (11th Cir. 2018). At the hearing, the California Plaintiffs noted that they were no longer challenging any of the Court's factual findings as detailed in their Stay Motion and, instead, would only seek *de novo* review of the Court's determination that the prohibition on non-consensual third-party releases articulated in the Supreme Court's decision in *Purdue*[2] did not apply under the facts of this case, and did not overrule the Eleventh Circuit's opinion in *Munford*.[3] The arguments raised by the California Plaintiffs, however, are the same arguments they raised in their objections to confirmation, which the Court carefully considered and overruled.

With respect to the Court's approval of the Bar Order and Channeling Injunction contained in the Insurance Settlement Agreements, on request of the California Plaintiffs, the Court deferred ruling on confirmation of the Debtors' Second Amended Joint Chapter 11 Plan (the "Plan") until the Supreme Court issued its opinion in *Purdue*. The Court then invited parties to submit briefs on the effect of *Purdue* on the Plan.

After considering all of the briefs and further arguments of counsel, in addition to the record already established at the confirmation hearing, the Court determined that the Insurance Settlement

---

[2] *Harrington v. Purdue Pharma, L.P., et al.*, 144 S.Ct. 2017 (June 27, 2024).
[3] *In re Munford*, 97 F.3d 449 (11th Cir. 1996).

Agreements, including the Bar Order and Channeling Injunction, did not violate *Purdue* because, among other things:

(1) *Purdue* did not address approval of settlement agreements under Federal Rule of Bankruptcy Procedure 9019 or sales of a debtor's property under 11 U.S.C. § 363 of the Bankruptcy Code, both of which are applicable in this case; and

(2) evidence demonstrated that the Tort Claimants would be paid in full, and the Supreme Court specifically recognized in *Purdue* that it was not opining whether non-consensual third-party releases could be approved when creditors would be paid in full.

The Court also found the lack of an objection by the United States Trustee significant considering its strong objection to the releases in *Purdue* and in other cases. The United States Trustee expressed that, under the specific facts and circumstances of the Debtors' cases, *Purdue* is inapplicable.

Nothing in the California Plaintiffs' Stay Motion makes the Court question its interpretation of *Purdue* and its lack of an effect on this case, much less find a likeliness of reversible error. Although this particular argument was abandoned at the hearing, the California Plaintiffs' Stay Motion also fails to demonstrate that the Court is likely to be reversed for relying on Brad Safon's testimony regarding the reasonableness of the Insurance Settlement Agreements. While the California Plaintiffs took issue with Mr. Safon's methodology, such an objection goes to the weight the testimony should be given, not its admissibility. Even without Mr. Safon's testimony, there was additional credible testimony from other witnesses to support the Court's finding that the Tort Claims will be paid in full.

The Court also finds no basis for determining that the California Plaintiffs are likely to succeed in appealing the classification of their claims with similarly situated tort claims, or the Court's entry of a final order, although at the hearing on the Stay Motion the California Plaintiffs appeared to abandon these arguments as well.

### Second Factor: Irreparable Injury to Appellants if a Stay is Denied

As to the second factor, the California Plaintiffs have not demonstrated that they will suffer an irreparable injury if the Confirmation Order is not stayed. The Court made the factual finding, based upon substantial testimony that the Insurance Settlement Proceeds[4] are sufficient to pay the Tort Claims in full. The California Plaintiffs have not shown that this finding is clearly erroneous. Also, the possibility of an appeal becoming equitably moot, without more, does not constitute irreparable harm. *In re W.R. Grace & Co.*, 475 B.R. 34, 207 (D. Del. 2012); *see also In re Scrub Island Dev. Grp. Ltd.*, 523 B.R. 862, 878 (Bankr. M.D. Fla. 2015) ("the majority of courts have held that the risk that an appeal may become moot does not by itself constitute irreparable harm."); *In re F.G. Metals, Inc.*, 390 B.R. 467, 477 (Bankr. M.D. Fla. 2008).

### Third Factor: Substantial Harm to Other Parties if a Stay is Granted

Nor have the California Plaintiffs demonstrated an absence of substantial harm to other parties if a stay is granted. The Debtors are out of money, and staying the Confirmation Order will cause the Debtors' estates to incur expenses, including but not limited to, professional fees they have no way of paying. This endangers the Liquidating Trust and the Tort Claims Trust and jeopardizes the carefully negotiated settlements set forth in the Plan. Appeals can take years to resolve, and payments to hundreds of creditors would be postponed.

### Fourth Factor: Public Policy

Finally, the Court finds that the issuance of a stay does not promote the public interest. The majority of the tort claimants have not sought a stay, which would significantly delay their distributions from the Tort Claims Trust.

For these reasons and those stated on the record, the Court does hereby

---

[4] Terms otherwise not defined herein shall have the meanings ascribed to them in the Second Amended Plan [ECF No. 802].

**ORDER** that the Stay Motion is **DENIED**.

# # #

*(Attorney Clay B. Roberts is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*